WILLIAM J. HOFFMAN, Plaintiff-Appellee, *v.* MARCUS STEEL CO., INC., Defendant-Appellant.

(No. 60956; ▮▮▮▮▮▮▮▮

First District (1st Division)—November 3, 1975.

Ditkowsky & Contorer, of Chicago (Kenneth K. Ditkowsky, of counsel), for appellant.

Thomas G. Lyons, of Chicago, for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This matter arose when William J. Hoffman filed a forcible detainer action in the circuit court of Cook County against his tenant, Marcus Steel Co., Inc. The tenant filed an answer and counterclaim against Hoffman alleging a prior breach by Hoffman of the covenant of peaceful possession and quiet enjoyment. The trial court, sitting without a jury, entered judgment for the plaintiff. The defendant appeals from this judgment, contending that: (1) the court erred in striking the defendant's counterclaim and failing to require the plaintiff to reply to affirmative matters in that counterclaim and answer; (2) the court erred in entering judgment for plaintiff because the evidence at trial established that the plaintiff had breached the covenant of peaceful possession and quiet enjoyment; and (3) the plaintiff's action should have been barred by the doctrine of retaliatory eviction.

After the plaintiff filed this forcible detainer action, the defendant filed a counterclaim which was incorporated by reference into the defendant's answer. This counterclaim alleged that the plaintiff had breached the covenant of peaceful possession and quiet enjoyment by certain acts which included a failure to repair plumbing which had caused water damage to the leased premises, various unauthorized entries by the landlord's agents and the landlord's failure to deposit rent checks received from the defendant. The plaintiff did not file a reply to the answer and counterclaim. However, there is nothing in the record to indicate that the defendant raised the plaintiff's failure to reply before going to trial.

The court, immediately before trial, struck the defendant's counterclaim, stating that the defendant had not asked the court for leave to file a counterclaim. However, the court stated it would permit the defendant to "put in any proof that the defense desires" concerning "any equitable defenses that are consistent with the pending action." The record demonstrates that the defendant was allowed to introduce evidence on all matters alleged in the counterclaim.

The evidence at trial consisted of the testimony of William J. Hoffman, the present landlord and plaintiff, and Sidney P. Marcus, President of

Marcus Steel, the tenant and defendant, and certain exhibits introduced by the parties. The evidence established that Mr. Marcus had signed a lease to occupy the first floor of a building at 440 West Diversey Parkway in Chicago. The lessor when the lease was signed was Herbert A. Kraatz. According to the lease, a furniture store was to be operated on the premises, and the lease was to run from October 1, 1971, through September 30, 1974, with an option to renew. The rent, to be paid monthly in advance, was $140 per month.

The plaintiff purchased the building from the original owner in August of 1972, during the defendant's term of tenancy. The plaintiff testified that he was not told of the existence of a written lease with the defendant and purchased the building with the understanding that the tenant only had an oral month-to-month lease. The defendant then began paying his monthly rent of $140 to the new landlord, the plaintiff. Defendant had admitted into evidence nine rent checks for the months of September, 1972, through May, 1973, which the plaintiff had not deposited until May 9, 1973. The rent was paid in full and on time until the payment of the October, 1973, rent.

In October of 1973, the plaintiff received a check for $130.85 for the October rent. Defendant testified that he deducted $9.15 from the October rent check because the plaintiff had not made certain repairs needed due to water leaking into the leased premises. The plaintiff accepted the check but advised the defendant in a letter dated October 3, 1973, that no such deductions would be allowed in the future.

The dispute in this case revolves around the payment or nonpayment of the rent for November of 1973. The defendant testified that the water leakage problem continued and that two lithographs were damaged by the water. The defendant testified that he therefore deducted $25 from the November, 1973, rent check, which was the value he estimated the lithographs to have. He gave the janitor the November rent check, reduced by $25, and one of the lithographs, which the janitor conveyed to the plaintiff.

The plaintiff testified that he had a conversation with the defendant several days later on November 7, 1973, during which he told the defendant he would accept nothing less than the full rent of $140. Defendant, plaintiff testified, refused to pay November's rent in full, so the plaintiff handed the defendant a five-day notice dated November 7, 1973. Defendant stipulated that he was served with a five-day notice on November 7, 1973. A letter dated that same day sent by the defendant to the plaintiff stated he was sending back his check for $115 that he had tendered previously for the November rent. The plaintiff-landlord then sent defendant a note on November 13, 1973, stating that he was

returning the defendant's check for $115 and demanding that the full rent of $140 be paid immediately.

On December 18, 1973, the plaintiff filed a forcible detainer action against the defendant. On December 31, 1973, the plaintiff received a check dated December 29, 1973, for $25 plus the original check previously tendered for the November rent from which the defendant had deducted $25. An accompanying note signed by the defendant indicated that the $25 check was to be used toward the November, 1973, rent. The plaintiff returned these checks to defendant with a note stating that the defendant had already breached the lease.

The defense was centered around defendant's allegation that the plaintiff had breached the covenant of peaceful possession and quiet enjoyment prior to defendant's failure to pay the November rent in full. Defendant's allegations included a failure by the plaintiff to repair water leaks, various trespasses by the plaintiff, missing tools allegedly taken by workmen hired by the plaintiff, and the plaintiff's failure to cash defendant's rent checks for a lengthy period of time.

A major portion of the defendant's evidence involved alleged water leakages from the apartments above the defendant's store. Concerning one incident, the defendant testified that the plaintiff had workmen doing major renovations in the second and third floor apartments above his store. He stated that "somebody had broken a pipe which flooded the rear of the store." However, it was never established who broke the pipe, and the defendant admitted he did not personally observe the pipe or any break in it. Defendant testified that water damage was done to the floor of the leased premises and to some pieces of furniture. The extent and nature of the damage was not given in the testimony.

Defendant testified to another incident where he said that some city workmen had turned off the local water supply for street repairs. When the water was turned on again, water came down from the third floor because "one of the workmen had forgotten * * * to turn off a spigot." Who this "workman" was or who employed him was not clarified.

Other incidents about which defendant testified included water leakage from radiators in an unoccupied upstairs apartment and water leakage from a tub faucet in the third-floor apartment that was left running. The defendant testified that the latter water leakage caused damage to his electrical system which the defendant had repaired. Although the evidence is not entirely clear on this point, it appears that the apartments upstairs from the leased premises were unoccupied during the period when the water leakages occurred. The defendant testified that he had notified the plaintiff of all these occurrences.

Plaintiff testified that the defendant had complained to him about

water damage to the leased premises. He therefore sent some people over to determine what the problem was and they hooked up some radiators above the store. When asked whether some of the water damage was due to breaking pipes or tenant problems, the plaintiff replied:

> "I don't know if it's specifically breaking pipes. It might have been the hooking or unhooking of radiators. Things like that."

Plaintiff testified that the city plumbing department had visited the leased premises three times (apparently at the tenant's request) and found no evidence of leaking. Plaintiff stated that the city inspectors "gave me no citation of such and more or less corroborated my point that some of these leaks are fictional or exaggerated."

The defendant's main allegation involving a trespass concerned a dispute over a storage area at the rear of the building on the first floor. This storage area was separated from the front part of the building by a wall and door and was divided into six storage lockers. Defendant testified that when he moved into the leased premises the prior landlord had given him three of these stalls to use, while the other three stalls were reserved for the use of the upstairs tenants.

Plaintiff testified that on one occasion some men went into the storage area to remove the storage lockers. The defendant objected to the removal of the lockers stating he had a right to occupy them, plaintiff testified, and the plaintiff thereupon dropped the matter. The defendant testified that he was occupying and using all six of the lockers at the time of trial. The lease was silent concerning who was to occupy the storage lockers.

Defendant also testified that "some one" had broken into one of his storage lockers and "I don't know today what is missing." There was no evidence as to who broke into the locker or what was missing. Defendant also testified that employees of the plaintiff had used defendant's step ladders and tools.

Upon this evidence the court, sitting without a jury, entered a finding and judgment for the plaintiff on July 5, 1974, which awarded the plaintiff damages of $140 and possession of the premises. However, the court stayed its order concerning the possession of the leased premises until October 1, 1974, when the defendant was due to vacate under the lease. Following the entry of the judgment, the court summarized its findings in the case at the request of the parties.

After finding that the defendant had failed to pay the November rent in full and was properly served with a five-day notice, the court reviewed the evidence relating to the defendant's defenses for nonpayment of the rent. The court found generally that the defendant's evidence presented to establish these defenses "was limited, vague, and almost uncertain."

On the alleged water damage the court found that there was neither any definite testimony ·establishing the landlord's responsibility for such water damage nor a showing that the tenant's business had been affected in a substantial way by the alleged water leakages nor any evidence of a building code violation found by the ·city inspectors.

The court said it gave little credence to the defendant's blank statement that the plaintiff's employees had used defendant's tools because there was no specification as to who used what or when they did so or who saw them do so. The court noted that the lease was silent regarding who was to have use of the storage lockers that ·the defendant alleged the plaintiff had trespassed upon. The court also found that there was "little or no proof" for the court to consider regarding the defense of retaliatory eviction.

■■ Defendant's first contention on appeal is that the court erred in striking defendant's counterclaim which alleged a breach of the covenant of peaceful possession and quiet enjoyment. It is unnecessary for us to consider this issue on appeal, for the record reveals that the defendant was allowed to introduce evidence on all the matters raised in the counterclaim and the court thereafter made findings of fact on all the allegations raised by that counterclaim. Where a party's pleading is struck, there is no prejudice to that party where evidence is taken and a finding is made on the same matters alleged in the pleading. *Millikin v. Jones,* 77 Ill. 372; *Wilson v. Wilson,* 261 Ill. 174, 103 N.E. 743; and *Central Cleaners and Dyers, Inc. v. Schild,* 284 Ill.App. 267, 1 N.E.2d 90.

■■ Defendant next contends that the plaintiff's failure to reply ·to the affirmative defenses in the defendant's answer and counterclaim constituted an admission of the matters raised therein. We note that the defendant did not raise the plaintiff's failure to reply before going to trial, and the defendant then proceeded to introduce evidence concerning all the allegations made in the answer and counterclaim ·at trial. Where a party introduces evidence at trial to support allegations made in a pleading, that party waives the right to object to his opponent's failure to reply to those pleadings. *Mooney v. Underwriters at Lloyd's, London,* 33 Ill.2d 566, 213 N.E.2d 283; *First Federal Savings & Loan Association v. American National Bank & Trust Co.,* 100 Ill.App.2d 460, 241 N.E.2d 615; *In re Estate of Marsh,* 31 Ill.App.2d 101, 175 N.E.2d 633.

■■ The defendant next contends that the plaintiff-landlord breached the covenant of peaceful possession and quiet enjoyment thereby entitling the defendant to damages. We find it·unnecessary to enter into a discussion of what the law requires be·shown in order for a breach of a covenant of peaceful possession and quiet enjoyment to be established, because the trial court found that the defendant had failed to prove the

facts upon which he based this allegation. In order for this court to over-turn the trial court's findings of fact on these matters, we must find that the trial court's findings were against the manifest weight of the evidence. (*Turner v. Board of Education*, 54 Ill.2d 68, 294 N.E.2d 264; *Brown v. Zimmerman*, 18 Ill.2d 94, 163 N.E.2d 518; and *Griffith v. YMCA*, 7 Ill.App.3d 1040, 288 N.E.2d 718.) In reviewing the record we are of the opinion that none of the trial court's findings of fact was against the manifest weight of the evidence.

Regarding the alleged water damage caused by the plaintiff, the record supports the court's finding that there was no definite testimony that the landlord was responsible for the water leakage. While the de-fendant testified that a pipe had been broken, there was no testimony as to who broke the pipe or even whether anyone had ever located a break in any pipe on the premises. There was also no definite testimony identifying the plaintiff or his agents as being the responsible parties for other alleged water leaks involving a spigot left on, a tub overflowing or radiators leaking. Furthermore, visits by city plumbing inspectors failed to reveal any plumbing defects or leaks.

In addition, the court found that the defendant had failed to show that his business had been affected in a substantial way by the alleged water leakages. While the defendant testified that there had been "water damage" to certain items on the leased premises, he neither offered testi-mony as to the specific nature of the damage in most cases nor made any showing as to the monetary value of these alleged injuries. Furthermore, despite the alleged water leakages, the defendant has continued to carry on his furniture store business in the leased premises through the time of the trial.

Concerning the dispute over who had a right to occupy the storage area in the rear of the leased premises, as the trial court found, there was nothing in the written lease which established who had possession of this area. Furthermore, the landlord dropped his effort to claim the area and the tenant has remained in control of this area throughout the dispute up to and including the time of trial.

There was also a lack of any definite testimony concerning what work-men used which tools of the defendant. As to the defendant's complaint that the plaintiff held his rent checks for some months before depositing them, we fail to see how this did an injury to the defendant. Finally, there was no evidence at all concerning who broke into the defendant's storage locker or what was taken, if anything. We are of the opinion that the court's findings of fact regarding the defenses raised by the defen-dant are not against the manifest weight of the evidence.

Defendant finally contends that the plaintiff should have been barred

from his attempt to terminate defendant's tenancy under the doctrine of retaliatory eviction. Defendant contends that the landlord's eviction action was motivated by a desire to retaliate against the tenant for acts which the tenant had a right to take. Again, the trial court found the defendant's proof lacking, stating that there was "little or no proof" supporting this contention.

Defendant on appeal argues that his complaints about water leakages and trespasses by the plaintiff and the defendant's act of calling city plumbing inspectors were the real reasons the landlord filed an action to have him evicted. However, the landlord's complaint was based on the defendant's failure to pay his rent in full. Furthermore, the landlord testified that he did not hand the defendant the five-day notice until the defendant refused to pay the November, 1973 rent in full. The defendant never disputed this testimony. It was therefore a question of fact for the court whether failure to pay the rent or some other matter motivated the plaintiff to bring this eviction action. The court determined this in the plaintiff's favor. Being unable to find this decision to be against the manifest weight of the evidence, we do not disturb the trial court's finding. In making this determination, we do not reach the question of whether the doctrine of retaliatory eviction is a recognized defense in Illinois in an eviction action.

Accordingly, judgment is affirmed.

Judgment affirmed.

EGAN and SIMON, JJ., concur.