JOE CLARK, Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Appellees.

First District (5th Division)   No. 84—1487

Opinion filed February 14, 1986.—Modified on denial of rehearing March 21, 1986.

P. Scott Neville, Jr., and Arthur Wheatley, both of Chicago, for appellant.

Todd H. Thomas, of Eckhart, McSwain, Hassell & Silliman, of Chicago, for appellee Western Union Telegraph Company.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for other appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Joe Clark appeals from the circuit court's affirmance of related decisions of defendant Human Rights Commission, and from the money judgment computed by the court on administrative review. For the purposes of this appeal, the defendants do not contest that plaintiff was a victim of racial discrimination in his employment by defendant Western Union Telegraph Company, and that he was entitled to reinstatement and back pay pursuant to section 8—108 of the Human Rights Act. (See Ill. Rev. Stat. 1983, ch. 68, par. 8—108.) Plaintiff challenges remedial aspects of the decisions, and contends that the circuit court erred: (1) in affirming the back pay formula devised by the Human Rights Commission; (2) in accepting Western Union's computation of is back pay and in terminating his back pay entitlement before reinstatement; (3) in refusing to order his reinstatement; and (4) in striking certain paragraphs from his complaint for administrative review. We summarize the pertinent facts as follows.

Defendant Western Union Telegraph Company hired plaintiff, a black male, on February 9, 1976. Plaintiff worked as a sales representative in the general line division of Western Union's Chicago sales office until September of that year, when the company promoted him to the position of communications representative. On September 1, 1977, Western Union again promoted plaintiff, assigning him responsibility as a major account representative in the specialized systems and services division of the Chicago sales office. Then, effective January 1, 1979, plaintiff was transferred back to the general line division as a senior communication representative.

Plaintiff initiated an administrative action, claiming that Western Union discriminated against him on the basis of his race by demoting him. Western Union's defense was that plaintiff was not demoted, but merely transferred pursuant to an area-wide reorganization. The testimony of Daniel Carrington, vice-president of sales for the midwest region, became the focal point of the factual dispute. Mr. Carrington testified that Western Union anticipated a loss of revenue in its specialized systems and services (SS&S) division during 1979, and that its strategy

shifted from expanding sales to maintaining customers. The company simultaneously reduced the sales force in the SS&S division and placed service-oriented employees in the position of major account representative (MAR).

Carrington compared the employees who held the MAR position in 1978, before the reorganization, to those who held the position in 1979, after reorganization. He explained that plaintiff's transfer was not a demotion because plaintiff would have greater leverage on incentive compensation and better opportunities for promotion in the general line division, and he noted that three other MARs were transferred along with plaintiff. According to Carrington, the employees who were transferred were best suited to selling products, whereas the employees who retained or acquired the MAR title were best suited to servicing customers.

In his findings and recommendations, administrative law judge (ALJ) James Gerl specifically rejected Western Union's contention that the transfer improved plaintiff's leverage on commissions and his chances for promotion. the ALJ found that the transfer on January 1, 1979, was a demotion in form and in substance. He found that Western Union failed to articulate a legitimate, nondiscriminatory reason for the demotion, or in the alternative, that the reason advanced was pretextual. ALJ Gerl stated that Carrington's testimony was not credible, and that the demotion was based on highly subjective criteria. Although white employees were transferred along with plaintiff, the ALJ noted that in 1978, plaintiff outperformed those employees as well as the ones who retained or acquired the MAR title after plaintiff's demotion. The hearing officer concluded, by the preponderance of the evidence, that Western Union discriminated against plaintiff on the basis of race.

ALJ Gerl recommended that plaintiff be awarded back pay consisting of "a sum equal to the average gross income for major account representatives in the SS&S division, or equivalent current titles, from January 1, 1979 to date," less plaintiff's actual income for the same time period. He also recommended that plaintiff be reinstated to his former position. In a decision rendered January 11, 1983, the Human Rights Commission adopted the ALJ's finding as to racial discrimination, and approved the recommended back pay formula. The Commission later awarded attorney fees.

Plaintiff filed a motion to reconsider the back-pay formula, and requested clarification of the Commission's decision in the form of a precise figure owed to him as back pay. With respect to the formula, the Commission stated:

"The Complainant is a salesman, and was demoted. We found that the Complainant could have earned additional salary if he had not been demoted. In order to figure out how much money was lost, we looked to the average gross income of people who were in the Complainant's position. The Complainant suggests that we look to his salary before he was demoted. The problem with the Complainant's suggestion is that the Complainant's salary was based in part on the amount of sales he made. Consequently, the amount of money the Complainant would have made would have depended on cyclical swings in the economy and the Respondent's business."

The Commission declined to compute a back-pay award, noting that it was not in a position to conduct hearings or find facts. The Commission strongly suggested that the parties reach an agreement concerning the amount of back pay due, but failing such an agreement, suggested that plaintiff bring a petition for enforcement.

On November 29, 1983, plaintiff filed his complaint for administrative review in the circuit court, naming the Human Rights Commission, members of the Commission, and Western Union Telegraph Company as defendants. Plaintiff challenged the Commission's back-pay formula and the award of attorney fees. The trial court granted defendants' motion to strike a number of paragraphs of plaintiff's complaint, but held that the complaint stated a cause of action for administrative review, and addressed the merits of the case. The court affirmed the Commission's decisions as to back pay and attorney fees, and ordered Western Union to submit a statement calculating back pay and attorney fees.

Concurrent with administrative review, plaintiff sought enforcement by the Human Rights Commission of its original order. The Commission, noting that the circuit court would not enforce the order in the absence of a petition pursuant to section 8—111(B) of the Human Rights Act (see Ill. Rev. Stat. 1983, ch. 68, par. 8—111(B)), ordered Western Union to comply with the Commission's order, and authorized the Department of Human Rights to proceed against Western Union in circuit court. Western Union then filed a motion to vacate, and plaintiff responded that his action for administrative review divested the Commission of its jurisdiction. The Commission treated plaintiff's response as a withdrawal of the enforcement petition, and granted the order to vacate.

Pursuant to the circuit court's order, Western Union filed a statement setting forth its calculation of plaintiff's back pay and attorney fees. Plaintiff filed objections, and the trial court held a hearing to de-

termine the accuracy of the amount submitted by Western Union. The court found that Western Union's calculation was accurate, and entered judgment thereon. Plaintiff requested that the court enforce the remainder of the Commission's order calling for reinstatement and other relief, but the court denied the request on grounds that plaintiff was required to file a petition for enforcement under section 8—111(B) of the Human Rights Act. See Ill. Rev. Stat. 1983, ch. 68, par. 8—111(B).

Plaintiff filed a timely notice of appeal.

OPINION

■ Plaintiff first contends that the trial court erred in affirming the Commission's back-pay formula and in entering a judgment based on that formula. He argues that the formula does not make him whole because it is based on average MAR compensation, whereas the evidence establishes that he was an above-average MAR. Plaintiff asserts that the Commission should have projected his actual 1978 earnings as an MAR into succeeding years. Defendants respond that MAR compensation depends upon sales commissions, and commissions depend, in turn, upon cyclical economic factors. Given the uncertainty of sales, defendants maintain, the Commission and the trial court were justified in using a formula based on average compensation.

The parties have cited no cases which address back pay for employees paid according to incentive compensation plans. While the parties agree as to the general principles applicable in determining back pay, they differ as to the application of those principles in this case. We note that Illinois courts have frequently turned to Federal decisions for guidance in employment discrimination matters. See *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 1002, 467 N.E.2d 635; *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 363, 315 N.E.2d 344.

There is no single "correct" formula for computing back pay in an employment discrimination case. (*United States v. Allegheny-Ludlum Industries, Inc.* (5th Cir. 1975), 517 F.2d 826, 852, *cert. denied sub nom. National Organization for Women, Inc. v. United States* (1976), 425 U.S. 944, 48 L. Ed. 2d 187, 96 S. Ct. 1684.) The purpose of a back-pay award is to make the discriminatee "whole," meaning that it should put the claimant in the position he or she would have been in respecting salary, raises, sick leave, vacation pay, pension benefits and other fringe benefits, but for the discriminatory act. (See *Rasimas v. Michigan Department of Mental Health* (6th Cir. 1983), 714 F.2d 614, 626-28, *cert. denied* (1984), 466 U.S. 950, 80 L. Ed. 2d 537, 104 S. Ct.

2151, and cases cited therein.) "Where possible, an individualized remedy should be utilized because it will best compensate the victims of discrimination without unfairly penalizing the employer." (*Stewart v. General Motors Corp.* (7th Cir. 1976), 542 F.2d 445, 452, *cert. denied* (1977), 433 U.S. 919, 53 L. Ed. 2d 1105, 97 S. Ct. 2995.) Back pay should be awarded even though a precise amount cannot be determined, and ambiguities should be resolved against the discriminating employer, since the employer's wrongful act gave rise to the uncertainty. See *Rasimas v. Michigan Department of Mental Health* (6th Cir. 1983), 714 F.2d 614, 628; *Day v. Mathews* (D.C. Cir. 1976), 530 F.2d 1083, 1086.

■ Applying these principles to the present facts, we find that the trial court erred in affirming the Commission's back-pay formula. By setting plaintiff's back pay at the level of average compensation for MARs, the Commission rejected the individualized remedy proposed by plaintiff, it resolved the uncertainty created by Western Union's discriminatory act against the victim of that act and it reached this result with no factual predicate whatsoever. We hold that the Commission abused its discretion with respect to the back-pay award in this case, and we remand for reconsideration.

Plaintiff proposed to the Commission that his actual earnings as a MAR in 1978 should be used to calculate back pay in succeeding years. Plaintiff earned $43,910 in 1978, substantially more than any other MAR in the Chicago sales office. By contrast, average MAR compensation in 1979 was $29,948. In effect, the Commission decided that plaintiff likely would have earned $14,000 less in 1979 than he did in 1978. In reality, the Commission merely concluded that an average was fair, and made no attempt at determining what plaintiff likely would have earned by any reasoned method.

The Commission's justification for choosing an average was that plaintiff's commission income "would have depended on cyclical swings in the economy and [Western Union's] business." Yet the administrative record contains no evidence of general economic conditions after plaintiff's demotion, and it contains no evidence of the strength or weakness of Western Union's business. (Carrington, whose credibility was questioned by the hearing officer, testified that the company *anticipated* slack demand in 1979, but there was no evidence of *actual* business activity after 1978.) Moreover, there is nothing in the record to indicate what effect economic or business cycles would have had on plaintiff's earnings. We believe that these factors are far too nebulous to justify the Commission's conclusion.

We find the defendants' arguments unpersuasive. The Commission

characterizes the issue as one of fact, and argues that the decision was not against the manifest weight of the evidence. The Commission maintains that it would be unfair and unrealistic to assume that plaintiff would have earned as much after 1978 as he did in 1978, and points out that there is no evidence that plaintiff's earnings would have been so high after 1978. We note that there is likewise no evidence that plaintiff's earnings would have been so low. More important, it was Western Union's discriminatory demotion which prevented plaintiff from showing what his earnings as an MAR would have been. The evidence shows that plaintiff's incentive compensation was based on his performance as an MAR, and there is nothing unfair or unreasonable in assuming that plaintiff's future performance would resemble his past performance. The contrary assumption of the Commission, that plaintiff's earnings depended on undefined economic factors, we find to be baseless and arbitrary.

Western Union argues that a back-pay award is a discretionary decision, and that the Commission did not abuse its discretion by excluding speculative incentive compensation. Western Union notes that courts have frequently approved the use of averages in determining back pay. (See *Love v. Pullman Co.* (10th Cir. 1978), 569 F.2d 1074, 1077; *Stewart v. General Motors Corp.* (7th Cir. 1976), 542 F.2d 445, *cert. denied* (1977), 433 U.S. 919, 53 L. Ed. 2d 1105, 97 S. Ct. 2995; *Pedreyra v. Cornell Prescription Pharmacies, Inc.* (D. Colo. 1979), 465 F. Supp. 936.) We believe that these cases are distinguishable on their facts. In each, the court awarded back pay to a discriminatee or group of discriminatees who had never occupied the position in question. Because those who held the position earned different amounts, it was impossible to determine what the victims of discrimination would have earned. Here, however, plaintiff served as a MAR before he was demoted, and his earnings in that position are certain.

As to the argument concerning discretion, we adopt the comments of the United State's Supreme Court in *Albemarle Paper Co. v. Moody* (1975), 422 U.S. 405, 416-17, 45 L. Ed. 2d 280, 296, 95 S. Ct. 2362, 2371:

> "[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' [Citation.] The power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions. A court must exercise this power 'in light of the large objectives of the Act,' [citation]. That the court's discretion is equitable in nature, [citation], hardly means that it is unfettered by meaningful standards

or shielded from thorough appellate review. * * *

It is true that '[e]quity eschews mechanical rules * * *.' [Citation.] But when Congress invokes the Chancellor's conscience to further transcendent legislative purposes, what is required is the principled application of standards consistent with those purposes and not 'equity [which] varies like the Chancellor's foot.' " In this case, the Commission applied no meaningful standard. The law's preference for an individualized remedy was ignored and the Commission gave the benefit of the doubt to the wrongdoer which created the doubt. We conclude that the Commission abused its discretion.

■ We believe that adverse theories concerning the calculation of back pay should be resolved not by arbitrary choice between alternatives, but by systematic analysis of the facts. In *Equal Employment Opportunity Com. v. Kallir, Philips, Ross, Inc.* (S.D. N.Y. 1976), 420 F. Supp. 919, *aff'd* (2d Cir. 1977), 559 F.2d 1203, *cert. denied* (1977), 434 U.S. 920, 54 L. Ed. 2d 277, 98 S. Ct. 395, the district court established a methodology for setting the amount of back pay. In that case, the employer argued that salary increases were dependent upon individual performance evaluations, and that any award of salary increases to plaintiff would be highly speculative. The district court commented: "The short answer is that where one's conduct has prevented a precise computation of damages, the injured party is not to be deprived of adequate damages." (420 F. Supp. 919, 923.) The court first established plaintiff's likely earnings for the relevant period, then placed the burden on the defendant to show amounts which should be deducted. 420 F. Supp. 919, 924.

We believe this method shows proper regard for the adverse positions of the parties and resolves disputes in a reliable manner, while preserving the flexibility needed to adapt the back-pay award to individual facts. Therefore, pursuant to Supreme Court Rule 366 (87 Ill. 2d R. 366) and section 3—111(a)(7) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(a)(7)), we remand this case with instructions for the Human Rights Commission (or a duly appointed administrative law judge) to hold a hearing to determine what plaintiff likely would have earned but for Western Union's discriminatory demotion. First, plaintiff should advance his theory of likely earnings along with supporting evidential material. If the Commission (or the hearing officer), finds this showing to be reasonable, the burden should shift to the company to show that plaintiff's earnings likely would have been less. Plaintiff should then be entitled to rebut. The parties should be afforded ample discovery to place relevant evidence before the Commission, to the extent that such material has not already been discov-

ered.

We decline plaintiff's request to enter judgment based on calculations set forth in his brief. We note that the Commission rejected plaintiff's claim for increased payment on the Chicago Board of Trade transaction, finding that plaintiff failed to prove discrimination. Plaintiff has not appealed from this adverse ruling, and so he cannot claim entitlement here. (See also *Clark v. Western Union* (1986), 141 Ill. App. 3d 174.) Although we would find plaintiff's 1978 income of $43,910 to be a reasonable basis for calculating back pay, we do not know whether Western Union can establish the likelihood of lesser earnings. We believe that an evidential hearing is the proper remedy for the Commission's error in this case.

Plaintiff's contentions concerning the circuit court's computation of back pay and striking of paragraphs need not be decided in view of our remand. We note that, generally, a party suffers no prejudice from a stricken pleading if the court takes evidence and makes findings on the same matters alleged in the pleadings. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 204, 456 N.E.2d 206; *Hoffman v. Marcus Steel Co.* (1975), 33 Ill. App. 3d 1039, 1044, 339 N.E.2d 539.) We note also that the Administrative Review Act authorizes the circuit court to enter money judgments based on the administrative record. See Ill. Rev. Stat. 1983, ch. 110, par. 3—111(a)(8).

■ We reject plaintiff's contention that the circuit court erred in refusing to order plaintiff's reinstatement. Plaintiff properly petitioned the Commission for enforcement under section 8—111(B) of the Human Rights Act (see Ill. Rev. Stat. 1983, ch. 68, par. 8—111(B)), but then withdrew his petition. Thus the circuit court's power was limited to review of the administrative decision before it, and did not extend to enforcement of the reinstatement order. See *Winkler v. Department of Public Aid* (1983), 114 Ill. App. 3d 133, 448 N.E.2d 266.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded for further proceedings.

PINCHAM and MURRAY*, JJ., concur.

---

*Original opinion was concurred in by Presiding Justice James J. Mejda prior to his retirement on November 30, 1985. Justice James C. Murray was assigned to consider the petition for rehearing and concurs in the opinion as modified and denial of the petition for rehearing.