AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, Council 31, AFL-CIO, *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES *et al.*, Defendants-Appellants.

First District (3rd Division) No. 1—96—0899

Opinion filed May 14, 1997.—Rehearing denied June 19, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, a labor organization and three State of Illinois employees, filed a complaint against the Department of Central Management Services (CMS), its Director, and the Illinois Civil Service Commission for administrative review from the Illinois Civil Service Commission (the Commission). The complaint was based on the Commission's approval of revisions to the job classification plan that created the "Public Service Administrator" classification (PSA). The PSA classification replaced approximately 240 other job classifications. The trial court dismissed the labor organization from the suit with prejudice and later issued a writ of *certiorari* in favor of the individual plaintiffs. The court ordered the defendants to reinstate the plaintiffs to the classifications they had been assigned to prior to the revision of the plan. On appeal, defendants contend that: (1) the Commission's approval of the classification plan was not subject to review by writ of *certiorari*; and (2) assuming *arguendo* that the Commission's decision was reviewable using a writ of *certiorari*, the Commission's approval of the revision was not arbitrary or capricious.

BACKGROUND

In September 1993, the Governor's Human Resources Advisory Council (the Council) issued its final report, entitled "Recommendations for Change in Illinois." One of the Council's recommendations was that the number of classifications of state jobs subject to the provisions of the Illinois Personnel Code (the Code) (20 ILCS 415/1 *et seq*. (West 1992)) be "dramatically reduced." The Council stated that, in the past, a classification was defined with such "excruciating detail that it could also serve as the actual job description" and that such a detailed type of system had resulted in 1,679 job classifications.

In the Council's opinion, career development would be expanded by the new broad-banded classification system because it would encourage extended career opportunities for workers who may have been locked into one or two agency-specific series and locked out of very similar jobs in other agencies. The Council also noted that the change would encourage state agencies to update job descriptions as a routine measure in the work place, thus eliminating the "cumbersome and difficult" requirement of having to obtain the approval of the Civil Service Commission for authorization of a position classification change.

In August 1994, the Illinois Department of Central Management Services published a notice in the Illinois Register of the proposed amendment to the position classification pay plan. The proposed amendment revised the heading of section 310.495 of the rules in the Administrative Code from "Senior Public Service Administrator Class Series" to "Public Service Administrator Series." 80 Ill. Adm. Code § 310.495 (1994).

The notice of proposed amendment stated that the new series would include the following classifications: "Public Service Administrator" (PSA); "Senior PSA, Level I"; and "Senior PSA, Level II." The notice also stated that the new PSA class would replace most job titles assigned to the merit compensation system salary ranges of MC-08 to MC-11 and would be assigned the salary range of $28,680 to $59,500[1]. The proposed amendment provided that any incumbent in the MC-08 to MC-11 salary range prior to classification in the PSA class would be placed into the range with no change in salary. Also, the proposed amendment provided that salary increases of between 5% and 10% may be given to those in the PSA class who were assigned additional responsibilities.

---

[1]On January 24, 1995, CMS amended its rules to reflect that the minimum salary for the PSA class is $29,544 and the maximum salary is $60,876 (19 Ill. Reg. 1024 (January 24, 1995)).

On November 15, 1994, Stephen Schnorf, former director of CMS[2], approved a change in the classification plan to add the PSA classification. The classification plan review report that was compiled by CMS stated that the new classification applied to certain managerial supervisory or confidential state employees whose positions were at the salary ranges MC-08 through MC-11. Employees whose positions were affected by the new PSA class would move into the class at their existing salaries.

The report stated that the PSA class was "created in order to consolidate a large number of senior management classifications to result in a more effective classification system." The report also stated that the narrowly defined classes that previously were used restricted management's ability to assign duties and functions to positions. According to the report, the "establishment of the Public Service Administrator class is consistent with a broad banding approach to classification and will enable management flexibility in the assignment of duties and creation of positions."

Common to all PSA positions is the management nature of the work. PSA positions are "full line supervisors" or administrators who assist higher level managers. Other PSA positions may act in a confidential labor relations capacity. The PSA class encompasses those jobs where the scope of the operation and associated administrative and managerial duties is not as great as that of the Senior PSA, but where work performed is higher than that of first level management positions.

The minimal requirements for the PSA class include the knowledge, skill, and mental development equivalent to the completion of four years of college, preferably with courses in business or public administration, and prior experience equivalent to three years of progressively responsible administrative experience in a public or business organization. Specific requirements vary by position option and relate to the specific position's duties and responsibilities.

On November 17, 1994, the Illinois Civil Service Commission held a special meeting to determine whether to approve the creation of the PSA classification, as required by the Personnel Code. 20 ILCS 415/8a (West 1992). Gilbert Feldman, attorney for the American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME), attended the meeting and voiced his opinion

---

[2]Michael S. Schwartz is the current Director of the Department of Central Management Services and is substituted for Stephen B. Schnorf pursuant to section 2—1008(d) of the Code of Civil Procedure. 735 ILCS 5/2—1008(d) (West 1992).

that the PSA class did not comply with section 8a(1) of the Personnel Code, which requires that a classification plan be "based upon similarity of duties performed, responsibilities assigned, and conditions of employment so that the same schedule of pay may be equitably applied to all positions in the same class." 20 ILCS 415/8a(1) (West 1992). Mr. Feldman stated his opinion that the reclassification would encompass job titles so disparate that they rationally could not be placed in the same classification.

Mike Murphy responded on behalf of CMS at the Commission's open meeting by stating that the commonality in the class consists of the supervisory responsibility of each employee. Murphy also stated that the decision to create the PSA class was in response to the Human Resource Advisory Committee's suggestion that the number of classifications be reduced. Murphy said that the PSA class would create a career ladder for employees.

At the special meeting, the Commission unanimously approved the PSA class specification and abolished approximately 240 classifications. On November 17, 1994, Bruce J. Finne, Executive Director of the Commission, sent a letter to Feldman notifying him of the Commission's decision.

After the Commission approved the PSA class, CMS sent letters to state employees affected by the change. A letter sent by Julie L. Moscardelli in CMS's bureau of personnel management stated that the change would make the classification plan more understandable and the system more " 'user friendly.' " The letter also stated that the new position title includes a broadened pay range and may enhance career opportunities. The letter also delineated eight option designations for the new class: (1) general administration/business/marketing/labor/personnel; (2) fiscal management/accounting/budget/internal auditing insurance/financial; (3) management information systems/data processing/telecommunications; (4) physical sciences/environmental; (5) agriculture/conservation; (6) health and human services; (7) law enforcement/correctional/public safety/inspection and compliance; and (8) special license (attorney, pharmacist, registered engineer, etc.).

On December 22, 1994, the plaintiffs, AFSCME, and three state employees, Russell Ladson, Adele Trass, and Dany St. Preax, filed a complaint for administrative review, naming CMS, Director Schnorf, and the Commission as defendants. The complaint stated that AFSCME is the certified bargaining representative of many civil service state employees and that it was the petitioner in pending representation case proceedings before the Illinois State Labor Relations Board involving state employees who were in classifications abolished and

now in the PSA class. The complaint also said that the individual plaintiffs were in classifications that had been abolished by and replaced by the PSA class. AFSCME was identified as a "participating party" before the Commission.

The plaintiffs claimed that the Commission's approval of the new PSA class was contrary to law because the class fails to comport with the statutory standard specified under section 8a(1) of the Personnel Code. 20 ILCS 415/8a(1) (West 1992). The plaintiffs also alleged that the Commission's approval of the PSA class was contrary to the manifest weight of the evidence and adversely impacted them. The plaintiffs asked the circuit court to reverse the Commission's decision.

The defendants filed a motion to dismiss the complaint with prejudice based on a lack of subject matter jurisdiction. The defendants argued that the Commission's approval of the position classification was not an administrative decision subject to review under the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1992)) and that the plaintiffs did not have the right to seek review of the Commission's decision. In a memorandum filed in support of their motion, the defendants stated that neither AFSCME nor the individual plaintiffs had shown how they were aggrieved by the Commission's approval of the PSA classification. Additionally, the defendants argued that the individual plaintiffs were not parties to the administrative proceedings.

On March 24, 1995, the circuit court ordered that the plaintiffs' complaint for administrative review be stricken and allowed the plaintiffs 28 days to file an amended complaint. On March 28, 1995, the plaintiffs filed a first amended complaint for administrative review and for a writ of prohibition. In count I, which sought review under the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1992)), the plaintiffs alleged that AFSCME "was a participating party at [the Commission] hearing on behalf of itself and the State employees under the pay plan represented by AFSCME." The individual plaintiffs alleged that the Commission's decision deprived them of their "basic civil service rights under the Personnel Code which the aforesaid statutory standard was designed to protect." The individual plaintiffs did not identify which job classifications they had prior to the revision of the plan and did not state for which agency or agencies they worked.

AFSCME alleged that it was deprived of its "derivative interest as legal representative of the individual Plaintiffs and other State employees similarly situated." AFSCME also claimed that the Commission's decision would have an adverse impact on it in pending

representation proceedings before the Illinois State Labor Relations Board. In count II of the first amended complaint, the plaintiffs asked the court to issue a writ of prohibition to prevent the Commission from abolishing the classifications and replacing them with the PSA class.

The defendants filed a motion to dismiss the first amended complaint, alleging that the court lacked subject matter jurisdiction under the Administrative Review Law and that the plaintiffs failed to state a claim upon which relief could be granted regarding the writ of prohibition.

On August 4, 1995, the court dismissed count I of the first amended complaint with prejudice, ordered count II stricken, and allowed the plaintiffs 28 days to file an amended complaint. At a hearing on the motion to dismiss, the court found that the plaintiffs lacked standing to bring an administrative review action. The court also stated that "AFSCME is out as far as I am concerned. So I want you to plead a cause of action by way of a writ of prohibition" as to the individual plaintiffs.

On August 16, 1995, the plaintiffs filed a second amended complaint for a writ of prohibition, writ of *certiorari*, and declaratory and injunctive relief. The complaint noted that the prior administrative review count had been dismissed by the court. In addition to reiterating the claim for the writ of prohibition, the individual plaintiffs asked the court to review the action of the Commission pursuant to a writ of *certiorari*, to determine that such action was contrary to law, and to quash the action and proceedings of the Commission. The plaintiffs also asked the court to declare that the Commission acted in violation of its statutory authority, to declare that CMS's administration of the Personnel Code was illegal, and to enjoin the defendants from implementing the action of the Commission.

The defendants filed a motion to dismiss pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1992)), claiming that counts II and IV for a writ of prohibition and for declaratory relief and injunction, respectively, should be dismissed for failure to state claims upon which the requested relief may be granted and that count III for writ of *certiorari* should be dismissed for lack of jurisdiction.

After a hearing held on December 4, 1995, the circuit court denied the defendants' motion to dismiss, ordered the Commission's previously filed record to stand as the defendants' answer to count III of the second amended complaint relating to the writ of *certiorari*, and stayed counts II and IV of the second amended complaint. Thereafter, the parties filed briefs in support of their positions as to count II.

At a hearing on February 7, 1996, the circuit court stated that it understood the state's attempt to simplify matters in terms of the classification plan, but wondered how employees would be able to advance competitively with only one broad job classification. The court noted that the plaintiffs had asserted that they had been deprived of their "right to advancement in career service" and that the defendants claimed that the plaintiffs were not entitled to a writ of *certiorari* because they had not shown that they had been injured by the creation of the PSA class. The court stated that it was going to attribute an injury to the plaintiffs as a consequence of this change because "I think it does, in fact, deprive them of their right to career service under some form of merit approval." The court also stated that it did not see how the new class was based on a similarity in the types of employment because many of the abolished classes "have no coordination one with the other *** and many of these are totally different one from another."

While the court ordered that the writ of *certiorari* should issue, the court made clear that it was ruling only in favor of the three plaintiffs because "[t]his was not a class action." The court said that it was ordering the defendants "to reinstate these people to the positions that they had previously been [in]. I'm asking them to reinstate these categories of MC-8, MC-9, MC-10, and MC-11."

Counsel for the plaintiffs stated that he would voluntarily dismiss the remaining counts of the second amended complaint. The court's order states that a writ of *certiorari* will issue in favor of the individual plaintiffs, that counts II and IV are voluntarily dismissed without prejudice, and that "this is a final and appealable order." The court granted the defendants' oral motion for stay of the court's ruling, pending defendant's appeal, stating that "[t]his is a case that the Appellate Court must decide."

For the reasons which follow, we quash the writ of *certiorari* and its proceedings.

ANALYSIS

I

■ Defendants first contend that the Commission's approval of CMS's proposed change in the classification plan was not subject to review by a writ of *certiorari*. Plaintiffs initially argue that this argument is waived because defendants failed to raise this issue before the trial court. It is true that issues raised for the first time on appeal may not normally be considered by a reviewing court. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 27, 585 N.E.2d 51

(1991). However, this rule is not rigid and inflexible. *Hebb v. Beegle*, 135 Ill. App. 3d 157, 481 N.E.2d 846 (1985). The question in the case *sub judice* is one of law and has been fully briefed and argued by the parties. *People ex rel. Daley*, 146 Ill. 2d at 27. Furthermore, the waiver rule is an admonition to litigants, not a limitation upon the jurisdiction of the reviewing court. As such, we recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system. *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480, 584 N.E.2d 116 (1991). We believe that the instant case presents such an occasion.

 The common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427, 551 N.E.2d 640 (1990). Where the Administrative Review Law has not been expressly adopted, the writ of *certiorari* serves as an available method of reviewing the actions of agencies and tribunals exercising administrative functions. *Stratton*, 133 Ill. 2d at 427; *Hanrahan v. Williams*, 174 Ill. 2d 268, 272, 673 N.E.2d 251 (1996). The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, that the inferior tribunal proceeded according to the applicable law. *Stratton*, 133 Ill. 2d at 427; *Tanner v. Court of Claims*, 256 Ill. App. 3d 1089, 1092, 629 N.E.2d 696 (1994). "If the circuit court, on the return of the writ, finds from the record that the inferior tribunal proceeded according to law, the writ is quashed; however, if the proceedings are not in compliance with the law, the judgment and proceedings shown by the return will be quashed." *Tanner*, 256 Ill. App. 3d at 1091.

██ However, there is no absolute right to review by *certiorari*. The issuance of a writ of *certiorari* is within the sound discretion of the trial court. *Tanner*, 256 Ill. App. 3d at 1092. A writ is properly denied if, as a matter of law, the court is able to determine plaintiff cannot prevail or he is not entitled to the review he seeks. *Tanner*, 256 Ill. App. 3d at 1092. Furthermore, the writ should not issue where it would operate inequitably or unjustly, or in the absence of substantial injury or injustice to the petitioner. *Stratton*, 133 Ill. 2d at 428.

Defendants argue that the Commission's approval of the reclassification plan was a quasi-legislative action and, therefore, not

subject to review by a writ of *certiorari.* The plaintiffs argue that the instant case is reviewable by writ because the Commission's powers and decision in the instant case were quasi-judicial.

■ The United States Supreme Court has stated there is "a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other." *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 245, 35 L. Ed. 2d 223, 239, 93 S. Ct. 810, 821 (1973). Quasi-judicial hearings concern agency decisions that affect a small number of persons on individual grounds based on a particular set of disputed facts that were adjudicated. On the other hand, quasi-legislative actions involve general facts affecting everyone. No individual rights are at stake in a quasi-legislative proceeding. See *Advanced Systems, Inc. v. Johnson,* 126 Ill. 2d 484, 506-07, 535 N.E.2d 797 (1989).

For example, in *People ex rel. Narczewski v. Bureau County Merit Comm'n,* 154 Ill. App. 3d 732, 506 N.E.2d 402 (1987), the merit commission sought to hold a public meeting to review a written reprimand issued by a sheriff to his deputy. The court held that this action was quasi-judicial. *Narczewski,* 154 Ill. App. 3d at 735. Also, in *People ex rel. Olin Corp. v. Department of Labor,* 95 Ill. App. 3d 1108, 420 N.E.2d 1043 (1981), the court held that the Department of Labor's action was quasi-judicial in nature where the Director of the Department sought to hold a meeting to determine whether union employees received proper notice of a hearing regarding the eligibility of unemployment benefits. The court stated that a determination of the existence of proper notice requires an interpretation of "[t]he most fundamental requirement of the constitutional guarantee contained in the due process clause." *Olin Corp.,* 95 Ill. App. 3d at 1110.

Conversely, in *Advanced,* our supreme court held that the Department of Revenue's determination of the tax multiplier is a legislative function and the required multiplier hearing was intended to be an information-gathering forum in pursuit of legislative facts. As such, the court noted that the nature of the required hearing was similar to a rule-making or informational proceeding that affected all taxpayers in the city. The court stated that no individual rights were at stake at the multiplier hearing. *Advanced,* 126 Ill. 2d at 507. See also *Tyska v. Board of Education of Township High School District 214,* 117 Ill. App. 3d 917, 927, 453 N.E.2d 1344 (1983) (where court held that the board's decision to close school and reassign students was tantamount to the quasi-legislative power to make prospective regulations and orders and involved a public policy question concerning the

school system and district as a whole, and not an adversarial adjudication of the rights of the individual).

■ In the instant case, because the Commission is an administrative agency created by the legislature, it has quasi-legislative as well as quasi-judicial powers. See *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 161, 613 N.E.2d 719 (1993). Here, the legislature has granted the Commission explicit authority to approve, maintain, prepare and revise the classification plan (20 ILCS 415/8a(1), 10(4) (West 1992)) and to approve personnel rules and amendments to the rules submitted to it by the Director of CMS (20 ILCS 415/10(3) (West 1992)). The Commission also has the authority to hear and determine written charges seeking the discharge, demotion, or suspension of employees (20 ILCS 415/10(6) (West 1992)) and to hear appeals of employees who do not accept the allocation of their position under the position classification plan (20 ILCS 415/10(5) (West 1992)).

As stated earlier, plaintiffs argue that the Commission acted in a quasi-judicial manner when it approved the revision of the position classification plan because the plan deprived them of the right to future promotions. We disagree. Although the Commission has quasi-judicial powers, the Commission's required approval of the reclassification plan was a quasi-legislative function. The nature of the hearing on the reclassification plan was similar to rule making. Although the legislature allows the Commission to hear appeals of employees who do not accept the allocation of their positions, the view of individuals presented at the hearing in the instant case was allowed to provide information to the Commission. No facts or individual rights were adjudicated at the hearing. In fact, the plaintiffs' classifications at the hearing were not revealed and there is no evidence in the record of the plaintiffs' classifications prior to or after the Commission approved the reclassification plan. There is also no evidence in the record as to what affect, if any, the reclassification plan had on the plaintiffs. In particular, the record does not reflect whether some or all of the plaintiffs, prior to the reclassification, were in category MC-8, MC-9, MC-10, or MC-11. Additionally, we hold that, because the Commission's approval of the reclassification plan was a quasi-legislative action, the hearing was not subject to review by a writ of *certiorari*.

## II

■ Plaintiffs further argue that, assuming *arguendo* the Commission's decision was quasi-legislative, the Commission acted in an arbitrary and capricious manner. When an administrative agency

such as the Commission exercises its rule-making powers, it is performing a quasi-legislative (as opposed to a quasi-judicial) function, and, therefore, it has no burden to support its conclusions with a given quantum of evidence. *Illinois State Chamber of Commerce v. Pollution Control Board*, 177 Ill. App. 3d 923, 928, 532 N.E.2d 987 (1988). This fundamental principle explains the discrepancy in the standards of judicial review of each type of proceeding; that is, when dealing with an adjudicatory proceeding, a reviewing court may only set aside the agency decision if it is clearly against the manifest weight of the evidence. When reviewing administrative rules and regulations, on the other hand, a court may not invalidate the regulation unless it is clearly arbitrary, unreasonable or capricious. *Shell Oil Co. v. Pollution Control Board*, 37 Ill. App. 3d 264, 270-71, 346 N.E.2d 212 (1976). As a reviewing court, we must employ this standard of review because administrative agencies are inherently more qualified to decide technical problems and the mechanics of dealing with them. *Illinois State Chamber of Commerce*, 177 Ill. App. 3d at 928. Because the courts lack the expertise possessed by administrative agencies, they should hesitate to find a regulation unreasonable. *Shell Oil*, 37 Ill. App. 3d at 271.

Specifically, plaintiffs assert that the Commission has failed to comply with the statutory requirements in approving the reclassification plan. Section 8a(1) of the Personnel Code states that the revision of the classification plan must be consistent with the Code's standard that positions in a classification must have similarity of duties performed, responsibilities assigned, and conditions of employment so that the same schedule of pay may be equitably applied to all positions of the same class. 20 ILCS 415/8a(1) (West 1992). Plaintiffs argue that the reclassification is in contravention to the Code's standards and the system of merit employment.

■ We recognize that a fundamental purpose of a civil service system is to remove employment from the patronage system. *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 628 N.E.2d 844 (1993). Instead, it seeks to offer the employee the inducement of promotion for conscientious, faithful, honest, and efficient service. *Glenn*, 256 Ill. App. 3d at 833. "The evils, sought to be remedied by legislation of this character, are well known and well understood. These evils are such as grow out of what is generally called 'the spoils system' ***. *** [And, they] have been fitly characterized as inefficiency, extravagance *** and political assessments." *People ex rel. Akin v. Kipley*, 171 Ill. 44, 58-59, 49 N.E. 229 (1897). However, the need to protect employees against layoffs and demotions made solely on the basis of political patronage must be balanced against the corresponding need

of that administration to implement measures designed to save costs and promote greater efficiency in government administration. *Glenn*, 256 Ill. App. 3d at 833. Therefore, an administration may reclassify employees, or even abolish positions and lay off workers, if such steps are taken in good faith to promote greater economy and efficiency. *Glenn*, 256 Ill. App. 3d at 833. This policy allowing reclassification recognizes that an administration should not be unduly hampered in the performance of its managerial responsibilities. *Glenn*, 256 Ill. App. 3d at 834.

Plaintiffs concede that the Commission is empowered under the statute to change plaintiffs' classifications. However, plaintiffs contend that the action taken was not in conformity with the terms of the statute. However, plaintiffs' contention is not convincing. Defendants have cited cases from other jurisdictions that are more instructive. In *Heyne v. Mabrey*, 178 Ind. App. 610, 383 N.E.2d 464 (1978), the Indiana Court of Appeals held that plaintiffs were not injured by reclassification where the plaintiffs' salaries had not been reduced nor had their duties changed. In addition, the Indiana court held that the plaintiffs did not have any "property rights" in the possibility of step increases in pay because the step increase is a mere expectancy, which falls short of a legitimate claim of entitlement. *Heyne*, 178 Ind. App. at 613, 383 N.E.2d at 467.

Defendants also cite *Carls v. Civil Service Comm'n*, 17 N.J. 215, 111 A.2d 45 (1954). In *Carls*, the New Jersey Supreme Court held that the reclassification of employees was neither arbitrary nor capricious where neither the plaintiffs' duties nor their salaries changed. The court also held that the plaintiffs did not have a vested right in their former classifications because they were, at all times, subject to the broad reclassification powers that had been delegated by the legislature to the Commission. *Carls*, 17 N.J. at 223, 111 A.2d at 49.

Defendants further cite *Schultz v. Regents of the University of California*, 160 Cal. App. 3d 768, 206 Cal. Rptr. 910 (1984). In *Schultz*, the court held that the plaintiff did not have a protectible property interest where his salary was frozen after reclassification until the salaries of others in the new class rose to equal his salary. The court concluded that plaintiff's expectation of a step increase was not supported by any promises or "mutually explicit understandings" between him and the university regarding the step increase and that plaintiff had nothing more than a "unilateral expectation" that he would receive an increase in salary. *Schultz*, 160 Cal. App. 3d at 777-78, 206 Cal. Rptr. at 915-16.

We also believe *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 628 N.E.2d 844 (1993), is apposite. In *Glenn*, the plaintiffs, a class of cur-

rent and former career service employees of the City of Chicago, challenged the validity of the city's personnel rule that reclassified their positions, that reduced their salaries and eliminated their accrued seniority. The plaintiffs contended that the reclassification system was invalid because it did not protect the seniority and salary of the reclassified job holder. The court held that the rule in question did not provide for the right to seniority, but only provided for the right to reclassify to further efficiency and economy in government. The court noted that seniority and the values of career service were not synonymous, and to require that seniority and wages be protected in the event of reclassification would greatly dilute and undercut the economic and administrative reform that would warrant good-faith classification in the first instance. *Glenn*, 256 Ill. App. 3d at 835.

■ In the case *sub judice*, we are mindful that the trial court stated: "And I do attribute an injury to the plaintiffs as a consequence of this change because I think it does, in fact, deprive them of their right to career service under some form of merit approval. And I don't see how that merit approval is in any way systematically capable of being administered under a system where everybody regardless of what their particular job description is all get put into one category." However, in our view, this statement by the trial court has no factual support in the record. Rather, we agree with the defendants that the plaintiffs have failed to articulate how application of the new pay grade adversely affects them, especially considering that all employees entered the PSA classification at the same salary they had prior to the change, all employees moved into a salary range with at least as great a maximum salary as their previous range, and that most employees realized an increased maximum range with the change. Based on the record, we cannot say that the reclassification was arbitrary or capricious.

Accordingly, the writ of *certiorari* and its proceedings are quashed.

Writ quashed.

LEAVITT and CAHILL, JJ., concur.